## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Elizabeth Gasior                                :
6799 Bowerman Street East
Worthington, Ohio 43085                          :

       And                                   :

Juli Knecht                                      :
1403 Leslie Lane NE
Lancaster, Ohio 43130,                           :   Civil Action No. _2:13-cv-285_

       Plaintiffs                            :

                               Jury Demand Endorsed
       -vs-                                  :   Hereon

Board of Education                               :
Columbus City School District
270 East State Street                            :
Columbus, Ohio 43215
                                :

       And                                   :

Toia Robinson                                    :
Columbus City School District
270 East State Street
Columbus, Ohio 43215                             :

       And                                   :

Regina Brantley                                  :
Columbus City School District                    :
270 East State Street
Columbus, Ohio 43215                             :

       And                                   :

Dewayne Howard                              :
Columbus City School District
270 East State Street                       :
Columbus, Ohio 43215

                                            :

            And                             :


Dianne McLinn                               :
Columbus City School District
270 East State Street                       :
Columbus, Ohio 43215

            And                             :


Amy Dennis                                  :
Columbus City School District
270 East State Street                       :
Columbus, Ohio 43215

                                            :
            And                             :

                                            :
Gene T. Harris
Columbus City School District               :
270 East State Street
Columbus, Ohio 43215,                       :


            Defendants                      :


## **COMPLAINT**

## **I. INTRODUCTION, PARTIES, JURISDICTION**

1.      At all times pertinent hereto, Plaintiffs, both Caucasian,

were, and are, employed by the Defendant Board of Education,

Columbus City Schools [hereafter, "the Board"] assigned to the Gifted & Talented Department [hereafter, "G&T"];

2.      The individual Defendants are sued in their individual capacities, their acts set forth below having been done in the scope and course of their employment as state actors;

3.      Defendant Gene T. Harris is the Superintendent of Schools, reports to the Board, and has final policy-making authority for those policies implicated in the acts and omissions of the Defendants set out herein. Harris implicitly authorized, approved and acquiesced in the unlawful conduct of her subordinates set out herein;

4.      Defendant Toia Robinson assumed the position of Supervisor of G&T following the conclusion of the 2008-2009 school year;

5.      Defendant V. DeWayne Howard, African-American, holds the position of Director, Employee Relations;

6.      Defendant Regina Brantley, African-American, holds the position of Manager of Organizational Compliance. Brantley reports to Howard;

7.     Defendant Amy Dennis, commencing August, 2012, assumed a position created for her by the administration, "Director of Exceptional Children," in which she has direct responsibility of G&T and to whom Robinson, an African-American, reports;

8.     Defendant Dianne McLinn, African-American, holds a position in the Employee Relations Department. McLinn reports to Howard;

9.     The claims asserted by Plaintiffs herein arise under the Constitution of the United States, the laws of the United States, and those of the State of Ohio;

10.    This Court has jurisdiction of this case pursuant to the federal question statute, 28 U.S.C. §1331.  This Court also has pendent jurisdiction of the state law claims, which arise out of the same nucleus of operative facts, pursuant to 28 U.S.C. §1367;

11.    Venue is proper in this Court pursuant to 28 U.S.C. §1391;

## II. FACTS

**Elizabeth Gasior**

12.  By the conclusion of the 2008-2009 school year, Plaintiff Gasior had been employed by the Board for twenty (20) years. In 2000, she applied for, and was accepted, into G&T;

13.  Plaintiff has received periodic reviews, and all have been positive;

14.  Shortly after Robinson became supervisor, Mrs. Gasior began to experience changes in the operation of the Department by Robinson that hindered her ability to deliver quality services to the District's G&T students;

15.  In meetings and other communications in which Robinson was involved, Plaintiff became concerned that Robinson was intentionally making it difficult for her, and was making false statements criticizing her performance;

16.  Robinson also began to remove Plaintiff from activities and access to resources that were necessary to deliver the best services;

17.  On or about September 8, 2010, Robinson called Plaintiff into a meeting room and proceeded to make false accusations that Plaintiff was insubordinate. Subsequently, a "summary of

conference" was placed by Robinson in Plaintiff's permanent file containing the false accusations and misrepresentations of the meeting itself;

18. In the spring of 2010, Plaintiff was elected as a Faculty Representative for the Columbus Education Association to begin the next school year. She was one of two representatives, the other being long-time staffer Jean Miller;

19. At the commencement of the 2010-2011 school year, Plaintiff and Mrs. Miller requested that G&T staff provide them with input on concerns and suggestions regarding the operation of the Department. Plaintiff and Mrs. Miller collected the responses, provided information to Robinson, and attempted to meet with her to address the issues. The issues involved, among other things, the central purpose of the Department, the delivery of services to G&T children in the District. These were matters of great public concern. Robinson refused to meet with them. Throughout the remainder of that year, Plaintiff and Mrs. Miller continued to bring issues of concern to the delivery of services to G&T students. Robinson's responses to the expessions of concern was to deny them, or place the blame on someone else;

20. During the 2010-2011 school year Plaintiff continued to experience isolation, denial of access to resources, intentional disruption of her work, and a generally hostile environment under Robinson. Many of the instances of unfair and intimidating treatment Plaintiff experienced in that year and subsequent years is detailed in a narrative provided to the District when Plaintiff filed an internal complaint of discrimination on May 29, 2012. In that the Defendants have the document, the issues raised will not be detailed herein;

21. In the summer of 2011, during a meeting with representatives of Plaintiff to address her concerns about her treatment, Robinson stated, falsely, that Plaintiff had assaulted the former G&T supervisor, Francie Nolan, and had been "punished" for that assault by demotion. Robinson has disseminated this, and other false statements concerning Plaintiff and her fitness to teach, both inside and outside the Department;

22. In the school year 2011-2012, Plaintiff was further isolated physically and otherwise by Robinson from the G&T and school staff, was directed not to communicate with others inside and outside the Department, and was treated in a hostile manner by

Robinson. Such conduct continued to interfere with Plaintiff's ability to accomplish her duties, and caused continuing emotional distress;

23.   In the winter of 2012, Robinson announced that there would be a "staff reduction" in the Department, that all staff would have to interview for a new position of Regional Coordinator and other new positions. This process was known as a "211 process" after a provision in the Collective Bargaining Agreement between the CEA and the District;

24.   Plaintiff prepared a submission to the panel that would be considering her application for appointment to a Regional Coordinator position. Included in that submission was the copy of a reference letter previously prepared by Francie Nolan;

25.   Plaintiff interviewed for two positions in March, 2012 and was offered the higher one, Regional Coordinator;

26.   On May 11, 2012, Plaintiff was called to Robinson's office and presented with a demand to appear at the Board offices for a "pre-disciplinary hearing" [hereafter, "preD"]. Plaintiff learned that she was accused of falsifying the Nolan recommendation;

27.   On May 17, 2012, Plaintiff appeared at the Board offices, where she was required to defend herself in the face of accusations

voiced by Toia Robinson and staff member Maria Stockard.
Defendant Howard presided over the session;

28.   On May 25, 2012, Howard directed a letter to Plaintiff,
which went in her personnel file, and concluded that "any repeat
concerns may lead to disciplinary action that may include
termination....;"

29.   Howard knew, at the time he compelled Mrs. Gasior to
defend herself  and wrote the letter, that the accusations were false.
He had already received an email on May 14, 2012 from Francie
Nolan in which Mrs. Nolan informed him that it was she who
suggested that Plaintiff simply change the date on the
recommendation letter she, Nolan, had written Mrs. Gasior.
Robinson orchestrated the false accusation and Howard was
complicit in forcing Plaintiff to defend herself;

30.   Following the conclusion of "Round One" of the 211
process, in April, 2012, Plaintiff was deeply concerned that race had
played a part in the selection of candidates. Mrs. Gasior was aware
of Juli Knecht's having been removed from a Regional Coordinator
position by Robinson – addressed below in this Complaint – and the
position being given to an African-American not included in the

rankings of the recommended candidates. She also had great concerns about Robinson's preferential treatment of another African-American who was given a position though she lacked the basic qualification to even apply for a position; and Robinson's obstruction of the efforts of a Caucasian staffer to apply for a position who had excellent qualifications;

31. When Mrs. Gasior was "taken downtown" by the administration on the fabricated charge of falsification, she began to see her treatment as part of a pattern of discriminatory conduct by Robinson;

32. On May 29, 2012, Plaintiff filed a formal complaint of discrimination with the Board, asserting that Robinson had discriminated against her on the basis of race and because of her union activities. She prepared and submitted a detailed narrative;

33. Brantley was assigned by Howard and Harris to investigate the complaint. Although Board policy requires that a complaint be investigated, and a decision reached within thirty (30) days, Brantley informed Plaintiff that she would do nothing until the commencement of school in August, 2012. Because of the physical and emotional effects of the stress she had been under, Plaintiff was

unable during the summer to fulfill her hours of work, losing income;

34.  Unknown to Plaintiff, over that summer, Brantley was communicating improperly with Robinson and Howard to prepare an attack on Plaintiff's credibility;

35.  Before Plaintiff was even interviewed by Brantley, on September 11, 2012 she was again charged with unspecified unprofessional activities, and ordered to appear for another preD at Board offices on September 20th;

36.  On September 18, 2012, Plaintiff met with Brantley. Despite the amount of detailed information she had prepared, Plaintiff was given only a perfunctory interview by Brantley, who made it plain she had no interest in conducting a real investigation into the accusations;

37.  On September 20, 2012, Plaintiff appeared for the preD session which was presided over by Defendant McLinn. At the meeting, Amy Dennis – who at that point had been made Director over Robinson – and Robinson presented written anonymous accusations against Plaintiff – all of events purportedly having taken place in the first week of the school year. The entire session was

taken up with Robinson and Dennis making accusations. McLinn

closed the meeting and set a second session for September 27th;

38.    On September 24, 2012, Brantley denied Plaintiff's

complaint. Unknown to Plaintiff, Defendants had created a paper

trail of accusations against Plaintiff, many of which were years old,

none of which Plaintiff had been privileged to know of or rebut.

Robinson had solicited and retained for years false accusations that

Mrs. Gasior was unstable and dangerous.  Moreover, Brantley

excluded from the public record of her investigation all the

statements and interviews of staff whose truthful observations fully

supported Plaintiff's accusations, in order to make it appear that the

only evidence was against Plaintiff. Brantley made no effort to

investigate Plaintiff's complaints;

39.    On September 27th, McLinn reconvened the preD at the

Board offices. Robinson presented many of the documents that she

and Brantley had solicited and put into the public record of the

discrimination complaint – but which neither Plaintiff nor her CEA

representatives had been provided. When Plaintiff attempted to

respond to the new accusations, McLinn informed her that she was

"a pot stirrer," and silenced her. Robinson spoke for the balance of

the hearing. With only two (2) minutes remaining in the time set by McLinn, Plaintiff was informed she could speak. McLinn closed the session precisely on the time set, and denied Plaintiff the opportunity to present a real defense;

40.   On October 23, 2012, McLinn authored a disciplinary notice to Plaintiff, placed in her permanent file, in which she stated that Mrs. Gasior was "divisive, confrontational and antagonistic," and that she was not to "roll [her] eyes, sigh or frown" on pain of discipline up to and including termination;

41.   On or about November 12, 2012, in response to a union inquiry about why she had not addressed the anonymous accusations at the Department level before bringing charges against Mrs. Gasior, Dennis falsely stated that "Beth is such a dangerous person. Because Beth is so dangerous, I emailed DeWayne Howard and asked him to proceed. This was such a dangerous situation;"

42.   On November 15, 2012, Plaintiff was ordered off work by her physician because of the emotional and physical effects of the ongoing hostile work environment. She returned to work January 14, 2013;

43. Plaintiff continues to work in a hostile, abusive and intimidating work environment;

**Juli Knecht**

44. Plaintiff Knecht has been employed by the Board for twenty-five (25) years. She applied for, and was accepted into, G&T in or around 2004;

45. Over the years, Plaintiff has received periodic reviews, all have been positive;

46. Beginning the year 2011-2012, Plaintiff served on the Association Building Council for G&T, a body established by the collective bargaining agreement, and in that position, was aware of, and responsible to address, dissention among G&T staff that was adversely affecting delivery of services in the District;

47. During one ABC meeting, Robinson was questioned concerning disparities in state requirements and policy in the teachers' contract. She made statements asserting she had conferred with the Ohio Department of Education about the matter and was acting as directed;

48. In her capacity as ABC representative, Plaintiff contacted the Ohio Department of Education for more information and learned

that Robinson's statements were inaccurate. She then spoke to Robinson to report her concerns and her inquiry that showed inaccuracies reported to the Council. These were matters of public concern, directly affecting delivery of services to G&T students. Robinson dismissed Plaintiff's concerns, appearing very irritated that she was being questioned;

49. In the course of her work, Plaintiff learned as ABC representative that her colleague Jean Miller had been "taken downtown" on a charge that Miller had violated policy. Plaintiff learned that Miller had had a "letter of direction" placed in her permanent file;

50. Plaintiff approached Robinson to express her concern that Miller was being unfairly treated, as well as to address other issues of public concern;

51. Robinson's only response to Plaintiff was that "Someone has to make an example of that woman." Robinson appeared angry that Plaintiff had raised the question with her;

52. In January, 2012, Plaintiff was urged to apply for a position of "Leadership Intern," a role that grooms staff to be promoted to principal and other administrative positions within the

District. As part of the application process, Plaintiff was required to submit a letter of recommendation from her supervisor. The letter written by Robinson gave an unfavorable impression of her character. Plaintiff did not receive the position;

53. When she was questioned about the application at a later time by an African-American administrator, and when she informed him she had not received the position, he responded that "They don't want white females, they're looking for black males….;"

54. At the same time, speaking with a Caucasian assistant principal, Plaintiff was informed that "You are not the right color. Dr. Harris hates me….;"

55. During the time she was waiting for word on the application, Plaintiff learned of Robinson's announcement of the 211 process for staff reduction;

56. Like Mrs. Gasior, she prepared a submission and applied for two positions – one a Regional Coordinator, the other a lower-level Site Coordinator position;

57. Plaintiff was interviewed for both positions.;

58. Plaintiff subsequently learned on or about April 16, 2012, that despite her having been recommended as the top candidate to

receive one of the Regional Coordinator positions, Robinson had removed her name and replaced it with that of an African-American who had not been included in the rankings of the interview panel;

59.    On April 19, 2012, Plaintiff emailed Robinson, requesting that Robinson provide her the rationale for the removal. Robinson did not answer her, but instead questioned her on how Plaintiff had learned that she had removed Plaintiff's name;

60.    Prior to May 11, 2012, Plaintiff emailed Howard a letter and affidavit describing her treatment by Robinson. After waiting many weeks, on the 11th she met with Howard in an effort to have her concerns addressed. During the course of the meeting, another attendee raised the issue of a female African-American applicant who lacked the basic qualifications, being given preferential treatment by Robinson and being given a position. During the meeting, Howard commented that Robinson was an ineffective manager and that, in substance, she should be removed from the position. He led Plaintiff to believe that her concerns would be addressed and the injustice rectified;

61.    Unknown to Plaintiff, Howard was already aware of both situations, and had worked with Robinson to accomplish the result

of giving two African-American staffers preferential treatment by the District;

62.  Howard never did any investigation of Plaintiff's concerns, nor did he reply to her;

63.  Plaintiff was compelled to accept a Site Coordinator position in order to remain in the Department;

64.  In order to cover up the discriminatory conduct in the 211 process, Robinson, with the input of Dennis and Howard, altered 211 panel documents to make it appear that the panels had made the recommendations for the unqualified African-American staffers. Defendants also purged the public file on the 211 process to redact documents submitted by Plaintiff and others that memorialized unfair and discriminatory actions in the process;

65.  The denial of the position of "Leadership Intern" and the removal from the Regional Coordinator position have foreclosed any career opportunities within the District for Plaintiff;

### III.  FIRST CLAIM: CLAIM OF BOTH PLAINTIFFS: FIRST AMENDMENT RETALIATION

66.  Plaintiffs reallege Paragraphs 1 through 65  as if fully set forth herein;

67. This claim is brought pursuant to 42 U.S.C. §1983 to vindicate rights guaranteed Plaintiffs by the First and Fourteenth Amendments to the Constitution of the United States;

68. Plaintiffs each engaged in expression protected under the First Amendment, and also associated with others in such expression;

69. Defendant Robinson, aided and abetted by the other named individual Defendants, retaliated against Plaintiffs in taking the actions against them set forth herein, and in creating a hostile, abusive and intimidating work environment in order to chill their expression and free speech associations;

70. Defendants' illegal and malicious actions have caused Plaintiffs to lose income, suffer loss of reputation and earning capacity, and experience humiliation, loss of self-esteem, and emotional distress;

## IV. SECOND CLAIM: CLAIM OF BOTH PLAINTIFFS: DISCRIMINATION BASED ON RACE

71. Plaintiffs reallege Paragraphs 1 through 70 as if fully set forth herein;

72.   This claim is brought pursuant to 42 U.S.C. §1983 to vindicate rights guaranteed Plaintiffs under 42 U.S.C. §1981;

73.   Robinson, aided and abetted by the other named individual Defendants, discriminated against Plaintiffs on the basis of their race by taking the actions set forth herein, and creating a hostile, abusive and intimidating work environment;

74.   Defendants' illegal and malicious actions have caused Plaintiffs to lose income, suffer loss of reputation and earning capacity, and experience humiliation, loss of self-esteem, and emotional distress;

## V.   THIRD CLAIM: CLAIM OF PLAINTIFF BETH GASIOR: RETALIATION UNDER SECTION 1981

75.   Plaintiffs reallege Paragraphs 1 through 74 as if fully set forth herein;

76.   This claim is brought on behalf of Plaintiff Elizabeth Gasior  pursuant to 42 U.S.C. §1983 to vindicate rights guaranteed Plaintiffs under 42 U.S.C. §1981;

77.   Robinson, aided and abetted by the other named individual Defendants, retaliated against Plaintiff in response to her raising complaints of discrimination;

78.   Defendants' illegal and malicious actions have caused Plaintiff to lose income, suffer loss of reputation and earning capacity, and experience humiliation, loss of self-esteem, and emotional distress;

## VI. FOURTH CLAIM: CLAIM OF BOTH PLAINTIFFS: DISCRIMINATION UNDER CHAPTER 4112, OHIO REVISED CODE

79.   Plaintiffs reallege Paragraphs 1 through 78 as if fully set forth herein;

80.   This claim is brought pursuant to R.C. 4112.99 to vindicate rights guaranteed Plaintiffs under R.C. 4112.02(a);

81.   Defendants discriminated against Plaintiffs on the basis of their race, in violation of law;

82.   Defendants' illegal and malicious actions have caused Plaintiffs to lose income, suffer loss of reputation and earning capacity, and experience humiliation, loss of self-esteem, and emotional distress;

## VII. FIFTH CLAIM: CLAIM OF ELIZABETH GASIOR: RETALIATION

83.   Plaintiffs reallege Paragraphs 1 through 82 as if fully set forth herein;

84.   This claim is brought pursuant to R.C. 4112.99 to vindicate rights guaranteed Plaintiff Elizabeth Gasior under R.C. 4112.02(I);

85.   Defendants retaliated against Plaintiff because she asserted race discrimination claims;

86.   Defendants' illegal and malicious actions have caused Plaintiff to lose income, suffer loss of reputation and earning capacity, and experience humiliation, loss of self-esteem, and emotional distress;

**WHEREFORE,** Plaintiffs demand judgment against Defendants, jointly & severally, as follows:

1.   On all Claims, compensatory damages in such amounts as the jury deems just;

2.   On all Claims, punitive damages against the named individual Defendants in such amounts as the jury deems just;

3.   An award of attorney fees and costs of this action, pursuant to 42 U.S.C. §1988 and the common law;

4.   An Order requiring the Board to redact the negative information, disciplinary and other actions from Plaintiffs' files;

5.   Such other equitable relief as the Court deems just.

Respectfully submitted,

/s/ Michael Garth Moore
Michael Garth Moore (0025047)
233 South High Street, Third Floor
Columbus, Ohio 43215-4515
Telephone 888-318-0075
mike@mgmoorelaw.com

Trial Counsel for Plaintiffs

## JURY DEMAND

Plaintiffs demand trial by jury of eight persons as to all issues.

/s/ Michael Garth Moore